UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARTER ELLIS, *et al*., | ) | Case No. 1:18-cv-01058 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| *v*. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CA RESTAURANT GROUP, LLC | ) | |
| d/b/a SQUARE 22 RESTAURANT | ) | **JOINT MOTION FOR** |
| AND BAR, *et al*., | ) | **PRELIMINARY APPROVAL OF** |
| | ) | **CLASS AND COLLECTIVE ACTION** |
| Defendants. | ) | **SETTLEMENT** |

Plaintiffs Carter Ellis and Madison Ellis and Defendants CA Restaurant Group, LLC

d/b/a Square 22 Restaurant and Bar ("Square 22"), Dan Stroemple, and Michael Catanzarite

respectfully and jointly move the Court to (1) certify a proposed Settlement Class pursuant to

Fed. R. Civ. P. 23, (2) approve the proposed settlement of FLSA claims for the Potential Opt-Ins

who previously joined the case pursuant to 29 U.S.C. § 216(b) and preliminarily approve the

proposed settlement of Settlement Class Members' state law claims pursuant to Rule 23(e), (3)

approve a proposed notice to Potential Settlement Class Members, and (4) schedule a Final

Fairness Hearing. A Proposed Preliminary Approval Order is attached as Exhibit 2.

The Settlement Agreement of Class and Collective Action and Release of Claims

("Settlement Agreement"), attached as Exhibit 1, calls for a "hybrid" Settlement under the Fair

Labor Standards Act for Opt-Ins who have previously joined this action pursuant to 29 U.S.C. §

216(b), and an opt-out Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to state

wage law claims. The Settlement will apply to Plaintiffs Carter Ellis and Madison Ellis, the Opt-

Ins who have previously joined the case pursuant to the 29 U.S.C. § 216(b), and to all members of

the proposed Settlement Class. The Settlement Class Members consist of:

> All present and former hourly tipped employees of CA Restaurant Group, LLC d/b/a Square 22 Restaurant and Bar at any point from October 12, 2016 to June 1, 2018.

*See* Settlement Agreement (Exhibit 1) at Part I, ¶ 22.

The Settlement, achieved with the assistance of Honorable Magistrate Judge Thomas M. Parker, resolves *bona fide* disputes involving minimum wages, tips and overtime compensation under the FLSA and corresponding provisions of Ohio wage-and-hour law, including O.R.C. §§ 4111.01, et seq. and Art. II, Sec. 34a of the Ohio Constitution. Plaintiffs alleged that they and other tipped employees of Square 22 should have been paid the applicable full minimum wage as hourly employees and are owed minimum wages, tips, overtime compensation and liquidated damages. (*See* Complaint, ECF #1; First Amended Complaint, ECF #25-1.) Defendants deny Plaintiffs' claims and asserted affirmative defenses. (*See* Answer to Complaint, ECF #12).

The 42 total Potential Class Members will receive notice of their right to participate in the settlement and the total amount of the settlement proceeds on a global basis. The settlement results in an average gross Rule 23 class recovery of over $3,450.00 per Member of the Settlement Class. Each Potential Class Member will receive notice so that all Potential Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendants.

The case was hotly contested and settlement was achieved only through prolonged and difficult negotiations, including two full day mediations with Magistrate Judge Parker. The Settlement is fair, reasonable, and adequate and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b), and Rule 23(e). If approved by the Court, the Settlement will provide individual settlement payments to the Plaintiffs, Opt-Ins, and Class Members representing a very substantial percentage of their claimed damages.

The following settlement documents and proposed order are submitted for approval or entry by the Court:

Exhibit 1:    Settlement Agreement of Class and Collective Action and Release of Claims ("Settlement Agreement");

Exhibit 2:    Proposed Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order", providing for notice and hearing);

Exhibit 3:    Proposed Notice of Class Action Settlement and Fairness Hearing and Request for Exclusion Form; and

Exhibit 4:    Declaration of Plaintiffs' Counsel.

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## I.    THE LITIGATION

### A.    The Claims and Issues

Plaintiffs Carter Ellis and Madison Ellis filed a Collective Action Complaint in this Action (ECF #1) on May 7, 2018, and a Motion for Leave to File Instanter First Amended Complaint and Plaintiffs' First Amended Class and Collective Action Complaint adding Fed. R. Civ. P. 23 allegations (ECF ##25, 25-1) on October 2, 2018. Plaintiffs alleged that they and other tipped employees of Defendants should have been paid full minimum wage as hourly employees and are owed minimum wages, tips, liquidated damages, overtime compensation, and attorneys' fees and costs. Defendants deny Plaintiffs' claims and asserted affirmative defenses. (*See* Answer to Complaint, ECF #12.)

### B.    Investigation, Discovery, Document Analysis, and Research

Plaintiffs' Counsel conducted extensive investigations into the facts before and during the prosecution of the Action. This discovery and investigation has included, among other things (a)

meetings and conferences with the Plaintiffs and Opt-Ins; (b) inspection and analysis of class-wide and collective documents produced by the Plaintiffs, Defendants and the Department of Labor; (c) analysis of the legal positions taken by Defendants; (d) investigation into the viability of class treatment and collective action treatment; (e) analysis of potential class-wide and collective damages; (f) administration and processing of the collective action; (g) research of the applicable law with respect to the claims and potential defenses thereto; (h) briefing of the motion for leave to file Plaintiffs' First Amended Complaint Instanter; and (i) briefing of joint conditional certification.

Plaintiffs have vigorously prosecuted this case, and Defendants have vigorously contested it. The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims and of Defendants' defenses to them.

### C. Joint Stipulation for Conditional Certification

On July 12, 2018, the Parties stipulated to Conditional Certification and Notice (ECF #15), seeking conditional certification of FLSA claims pursuant to 29 U.S.C. § 216(b). The Court approved the Parties' stipulation, conditionally certifying the matter, and Plaintiffs sent Notice to present and former hourly tipped employees of Defendants as directed by the Court. (ECF #16.)

### D. Plaintiffs' Contested Motion for Leave to File Instanter First Amended Complaint

Plaintiffs filed a Motion for Leave to File Instanter a First Amended Complaint on October 2, 2018. (ECF ##25, 25-1.) Plaintiffs' Motion asked the Court to allow Plaintiffs to add Ohio Law, Fed. R. Civ. P. 23 allegations to Plaintiffs' Complaint, including class claims under O.R.C. §§ 4111.01, et seq. and Art. II, Sec. 34a of the Ohio Constitution. The motion was strenuously opposed by Defendants and extensively briefed by the parties. (*See* ECF ##25, 26,

27.)

## II.     SETTLEMENT NEGOTIATIONS

Settlement negotiations were protracted and difficult. A full day mediation with Honorable Magistrate Judge Thomas M. Parker on November 1, 2018 was unsuccessful in achieving a settlement. Subsequent to the first mediation, the Parties exchanged due diligence class-wide discovery materials and settlement proposals in an effort to narrow their positions. That effort resulted in a second mediation with the assistance of Magistrate Judge Thomas M. Parker on December 17, 2018, in which the case did not resolve. Subsequent to the second mediation, the Parties exchanged settlement proposals in an effort to narrow their positions, and after prolonged and difficult negotiations the settlement was achieved. The Parties thereafter conferenced with Magistrate Judge Thomas M. Parker to confirm the results of the settlement negotiations and the Settlement of the Action.

## III.     THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.     The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve disputed claims between the parties in two ways. First, the Settlement will resolve FLSA claims of the named Plaintiffs and similarly-situated employees who have previously opted into the case pursuant to 29 U.S.C. § 216(b). Second, the Settlement will resolve state law wage-and-hour claims of the named Plaintiffs and all members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(e). As highlighted below, Defense Counsel and Plaintiffs' Counsel believe that certification and Settlement are appropriate because the Released Claims are being compromised without need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Settlement Class Members in light of the procedural and substantive

encumbrances underscored by Defendants. Named Plaintiffs and class counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Class Members.

### B. The Proposed Settlement Payments and Distributions

**Total Settlement Amount.** Defendants have agreed to pay the Gross Settlement Amount of $390,000.00 as set forth in the Settlement Agreement (Exhibit 1, Part IV, ¶ 1). That sum will be used to make settlement payments to the Plaintiffs, Opt-Ins and other members of the proposed Settlement Class (i.e., "all present and former hourly tipped employees of CA Restaurant Group, LLC d/b/a Square 22 Restaurant and Bar at any point from October 12, 2016 to June 1, 2018," as contained within the Allocation Schedule attached to the Settlement Agreement as Exhibit A), which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiffs, Opt-Ins, and Settlement Class Members; (2) Attorneys' Fees and Reimbursed Litigation Expenses (as defined in Part IV, ¶ 5); (3) Costs of Administration; (4) Service Awards; and (5) any other obligations of Defendants under this Settlement Agreement. Plaintiffs' Service Awards, Attorneys' Fees and Reimbursed Litigation Expenses, and Costs of Administration, were each negotiated separately from the settlement payments to be made available to the Plaintiffs, Opt-Ins, and Settlement Class Members in individual settlement payments as provided below.

**Payments to Settlement Class Members.** From the Gross Settlement Amount, the total sum of $145,821.93 shall be allocated to the 42 Settlement Class Members as provided in the Allocation Schedule attached as Exhibit A to the Settlement Agreement, resulting in an average

gross recovery of over \$3,450.00 per Class Member. Subject to a \$50.00 minimum payment, payments to Settlement Class Members were determined by calculating the difference between each Settlement Class Members' pre-tip credit wage paid and the Ohio statutory applicable minimum wage during the relevant period, October 12, 2016 – June 1, 2018, and each Settlement Class Member's unpaid overtime during the relevant period. Based on the settlement amount for the Class, Settlement Class Members will receive approximately 118% of the difference between the applicable minimum wage for non-exempt non-tipped employees (\$8.10 per hour in 2016, \$8.15 per hour in 2017, and \$8.30 per hour in 2018) and the tip-credited minimum wage (\$4.05 per hour in 2016, \$4.08 per hour in 2017, and \$4.15 per hour in 2018) for all hours worked during the relevant period in which a tip credit was taken, and 118% of each Settlement Class Members' unpaid overtime compensation as applicable. For example, in a workweek where a Settlement Class Member worked 30 hours at \$4.05 per hour in 2016, the employee will receive approximately \$143.38 for that workweek (i.e., (\$8.10 - \$4.05 = \$4.05) x 30 hours x 1.18(%)). Inherent in the proposed distribution method in which Settlement Class members are distributed settlement payments based on their actual damages during the relevant period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D).

**Payments to Plaintiffs and Opt-Ins.** From the Gross Settlement Amount, in addition to the amounts allocated to the Plaintiffs and Opt-Ins as Settlement Class Members, Plaintiffs and Opt-Ins who have previously joined this Action pursuant to 29 U.S.C. § 216(b) will be provided additional payments, as provided in the Allocation Schedule attached as Exhibit A to the Settlement Agreement, of (a) additional liquidated damages in the amount of \$113,539.48 and (b) unpaid back tips, as applicable, in the amount of \$11,638.60.

**Service Awards.** The proposed Settlement provides for service awards to Plaintiffs Carter Ellis and Madison Ellis in the amount of $5,000 each in recognition of their assistance to Plaintiffs' Counsel and their contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members. The proposed service awards were well-earned. Among other things, Plaintiffs Carter Ellis and Madison Ellis consulted with Plaintiffs' counsel at critical stages, attended multiple mediations, and provided important documents and information throughout the course of the litigation. Their contributions were instrumental in enabling Plaintiffs' counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** From the Gross Settlement Amount, Plaintiffs' Counsel will receive attorneys' fees in the amount of $105,450.04, plus reimbursement of litigation costs in the amount of $549.96. The attorneys' fees to Plaintiffs' Counsel were negotiated separately from the payments made by Defendants to Plaintiffs. The attorneys' fees, and the settlement as a whole, are supported by Declarations of Plaintiffs' Counsel. (*See* Exhibit 4.) As provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel will not be paid by Defendants until after the final approval order is issued by the Court. (*See* Settlement Agreement, Exhibit 1, Part V, ¶ 8.)

## IV.    THE PROPRIETY OF APPROVAL

In addition to preliminary approval of the class action, this settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b), as to the Opt-in and Named Plaintiffs. The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D. Ohio Jan. 26, 2017)(quoting *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19

(S.D. Ohio May 30, 2012)); *Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D. Ohio May 4, 2018). *Accord, Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008)(quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)).

As to the proposed Settlement Class, Rule 23 requires a two-fold determination. Rule 23 authorizes the Court to certify the Settlement Class if it satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013). *See Trubridge*, 2017 U.S. Dist. LEXIS 193782, at *4-5 (granting preliminary approval of a class settlement); *Graybill v. KSW Oilfield Rental, LLC*, S.D.Ohio No. 2:15-CV-2462, 2016 U.S. Dist. LEXIS 65561, at *2 (Jan. 28, 2016); *Gilbert v. Abercrombie & Fitch, Co.,* S.D.Ohio No. 2:15-cv-2854, 2016 U.S. Dist. LEXIS 103441, at *12 (Aug. 5, 2016)(citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716-17 (6th Cir. 2000)). Recently amended Rule 23(e)(emphasis added) provides that the Court may approve the class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate…" *See, e.g., Jackson v. Trubridge,* 2017 U.S. Dist. LEXIS 193782, at *6 (scheduling a fairness hearing and granting preliminary approval of a class settlement upon the ground that it was "'fair, reasonable and adequate' to all participants").

The proposed Settlement satisfies all of these prerequisites and standards, as shown below.

## A. The Seven-Factor FLSA Standard Is Satisfied

In *Kritzer*, the court used seven factors to evaluate whether the proposed settlement was

"fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b). *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19-20. *See also Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017)(citing *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008)(applying an alternative formulation of the seven-factors); *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007)); *Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017); *Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275, at *3-4 (Oct. 26, 2016)(citing *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007)(further citation omitted)). "The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper*, 2017 U.S. Dist. LEXIS 169237, at *5 (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at * 13 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008); citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the Opt-Ins' and Class Members' damages. Indeed, wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation favor approval. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the

Settlement assures that the Plaintiffs and Opt-Ins will receive significant compensation. Given the uncertainties surrounding a possible trial in this matter, the certainty and finality of a settlement that will substantially benefit the Plaintiffs and Opt-Ins is in the public interest. *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at \*24-25 (S.D. Ohio May 30, 2012)(the public interest is served when a settlement "ends potentially long and protracted litigation")(citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs, the Opt-Ins, and all Settlement Class Members.

The other six factors are satisfied as well. Given the factual and legal complexity of the issues in this case, there is no guarantee that Plaintiffs will prevail at trial and the litigation could be long and protracted. In contrast, the Settlement assures that the Plaintiffs, Opt-Ins and Settlement Class Members will receive significant compensation. Given the uncertainties surrounding a possible trial in this matter and potential appeals, the certainty and finality of a settlement that will substantially benefit the Plaintiffs, Opt-Ins, and Class Members is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at \*24 (the public interest is served when a settlement "ends potentially long and protracted litigation"). Plaintiffs' counsel has extensive experience litigating FLSA claims, and there is no fraud or collusion. The Parties engaged in substantial document review, interviews with current and former employees, data analysis, and due diligence prior to the negotiations, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel.

B.    <u>**The Settlement Payments Are Fair, Reasonable, and Adequate**</u>

The proposed Settlement for members of the Settlement Class qualifies for preliminary approval under Rule 23(e). *See Trubridge*, 2017 U.S. Dist. LEXIS 193782, at *6. The Settlement "is fair, reasonable and adequate" as to each of the Parties. *Gilbert*, 2016 U.S. Dist. LEXIS 103441, at *55-56 (granting final approval of a class settlement). As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should likewise "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *25 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010); *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999)).

In the present case, the proposed Settlement will make individual settlement payments available to the Settlement Class Members in the total amount of $145,821.93 allocated to the 42 Settlement Class Members as provided in the Allocation Schedule attached as Exhibit A to the Settlement Agreement representing a substantial percentage of their claimed damages. The settlement results in an average gross recovery of over $3,450.00 per Class Member. Settlement Class Members' damages were determined by calculating the difference between each Settlement Class Members' pre-tip credit wage paid and the Ohio statutory applicable minimum wage during the relevant period, October 12, 2016 – June 1, 2018. Each Settlement Class Member will receive approximately 118% of the difference between the applicable minimum wage for non-exempt non-tipped employees ($8.10 per hour in 2016, $8.15 per hour in 2017, and $8.30 per hour in 2018) and the tip-credited minimum wage paid by Defendants (e.g., $4.05 per hour in 2016, $4.08 per hour in 2017, and $4.15 per hour in 2018) for all hours worked during the relevant period in which a tip credit was taken, and 118% of each Settlement Class Members' unpaid overtime compensation as applicable. This method of allocating the settlement proceeds

in a tip credit case is not only eminently equitable and fair as it computes each Settlement Class

Members' recovery based on actual damages, but equates to a substantial recovery of the unpaid

wages available to Settlement Class Members. Moreover, many Settlement Class Members have

already been afforded recovery as part of the Department of Labor investigation resulting in

recovery of unpaid tips. The payment received in this Settlement by Class Members will be <u>in</u>

<u>addition</u> to amounts previously recovered by the DOL and no offset will be applied.

Plaintiffs and Opt-Ins, in addition to the amounts allocated to the Plaintiffs and Opt-Ins as

Settlement Class Members, will be provided additional payments in the total sums, as provided

in the Allocation Schedule attached as Exhibit A to the Settlement Agreement, of (a) liquidated

damages in the amount of $113,539.48 and (b) unpaid back tips, as applicable, in the amount of

$11,638.60. Plaintiffs' and Opt-Ins' liquidated damages were determined applying the same

methodology as applied to the class as above – by calculating the difference between each

Settlement Class Members' pre-tip credit wage paid and the Ohio statutory applicable minimum

wage during the relevant period in which a tip credit was taken, and applying for liquidated

damages a two times multiplier as to minimum wages and a one times multiplier as to unpaid

overtime. In addition, as provided in the Allocation Schedule attached as Exhibit A to the

Settlement Agreement, Plaintiffs and Opt-Ins who did not previously participate in the

Department of Labor recovery of unpaid tips will also be entitled to 100% of their unpaid tips or

estimated tips (for tipped employees whose unpaid tips were not calculated through the DOL

investigation) based upon full and part-time workweeks during the applicable period.

**C.      The Service Awards Are Proper and Reasonable**

Reasonable service awards "are common in class action settlement[s] and [are] routinely

approved for the simple reason 'to compensate named plaintiffs for the services they provided

and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *18). *Accord*, *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990). Service awards "are not uncommon, and 'courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (Mar. 8, 2010)(approving $6,000 and $4,000 to representative Plaintiffs)(quoting *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *5 (approving $7,500 service award to named plaintiff). *Accord*, *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the service awards to Plaintiffs Carter Ellis and Madison Ellis are amply justified by their assistance to Plaintiff's Counsel and their contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members. Indeed, the Named Plaintiffs incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others", and "spent a good deal of time and effort in this case," by, among other things, providing analysis to Counsel, and advising Counsel as to settlement and prosecution of the action. *See In re Dun & Bradstreet*, 130 F.R.D. at 373-74. Plaintiffs attended multiple mediations, the case management conference before the Court, and were always readily available to counsel to provide documents, information, and answer key questions throughout the course of litigation. Their contributions were instrumental to achieving the proposed Settlement on behalf of all concerned. The proposed service awards of $5,000.00 are reasonable and well-earned.

### D.    The Attorneys' Fees Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.C.R. § 4111.10.

The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994)(quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall)(citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008); quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

Courts look favorably on separate negotiation of FLSA damages and attorneys' fees. *See Cisek v. Natl Surface Cleaning, Inc*., 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997); *Cruz v. Vel-A-Da, Inc.,* N.D.Ohio No. 3:90CV7087, 1993 U.S. Dist. LEXIS 21792 (May 14, 1993).

In the present case, the efforts of Plaintiffs' counsel resulted in proposed settlement payments to Class Members representing approximately 118% of the difference between the applicable minimum wage for non-exempt non-tipped employees and the tip-credited minimum wage for all hours worked during the relevant period in which a tip credit was taken, and 118% of each Settlement Class Members' unpaid overtime compensation as applicable. The named Plaintiffs and Opt-Ins will additionally recover liquidated damages for their alleged unpaid

minimum wages and unpaid overtime, in addition to unpaid tips based upon full and part-time workweeks during the applicable period for Opt-Ins whose unpaid tips were not calculated through the DOL investigation. Such allocations are "well above the 7% to 11% average result achieved for class members." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *20 (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)).

The proposed payment to Plaintiffs' counsel—negotiated separately from the payments to Plaintiffs, Opt-Ins and Class Members—is the result of hard bargaining and represents a significant reduction from the total fees and costs expended in the prosecution of the Action. The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' Counsel, attached as Exhibit 4.

Prosecuting complex litigation on a class basis is always difficult and time-consuming. The tasks required of Plaintiffs' counsel in this case included pre-litigation investigation of Plaintiffs' claims and the identities of potential corporate defendants; preparation of the Complaint; negotiation and submission of the Parties' Rule 26(f) report; as well as research and briefing of the Parties' Joint Stipulation for Conditional Certification and Notice, and investigation and interviewing of current and former employees of Defendants and putative Class Members. The activities of Plaintiffs' counsel intensified following the Parties' Joint Stipulation for Conditional Certification and Notice and Order granting the same. (ECF ##15, 16.) Following conditional certification Plaintiffs filed a Motion for Leave to File Instanter a First Amended Complaint, and attached First Amended Complaint (ECF ##25, 25-1), on October 2, 2018. Plaintiffs Motion asked the Court to allow Plaintiffs to add Ohio Law, Fed. R. Civ. P. 23

allegations to Plaintiffs' Complaint, including under O.R.C. §§ 4111.01, et seq. and Art. II, Sec. 34a of the Ohio Constitution. (*See id.*) The motion was opposed by Defendants and extensively briefed by the parties. (*See* ECF ##25, 26, 27.)

Following the unsuccessful November 1, 2018 mediation Defendants ultimately produced, and Plaintiffs' counsel analyzed, class-wide documents and data related to the Named Plaintiffs, Opt-Ins, and entire putative Rule 23 Class, including daily timekeeping and hour records and data, daily and weekly tip records, weekly and daily payroll records and data, payment and wage records, and other data and records. Plaintiffs' counsel also filed for, requested and analyzed wage, tip, investigatory documents, records and data from the Department of Labor under the Freedom of Information Act, 5 U.S.C. § 552. Plaintiffs' counsels' comprehensive investigation included an extensive analysis of the wage-and-hour information and other data and documents, construction and implementation of a software tool to analyze the dispositive wage and hour data, and the creation of spreadsheets for each Named and Opt-In Plaintiff, and each putative Rule 23 Class Member, comprising of over 35,000 data points from the records produced by Defendants which permitted Plaintiffs to compute a precise calculation of the unpaid minimum wage and overtime for Plaintiffs, the FLSA Collective, and the putative Rule 23 Class. The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement. Indeed, the extensive records required the Parties to break from mediation for over a month to permit sufficient time given the complexity, diversity and volume of the records produced.

It is notable that, although this matter is not to be settled pursuant to a percentage award as common in a class settlement, Plaintiffs' attorneys' fees award comprise approximately 27% of the overall amounts recovered. Applying *Fegley* and *Rawlings v. Prudential-Bache*

17

*Properties*, 9 F.3d 513, 515 (6th Cir.1993), courts in the Sixth Circuit commonly approve one-third fee awards in wage-and-hour actions, including FLSA/Rule 23 hybrid cases. *See, e.g.*, *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *18-22 (N.D. Ohio Mar. 8, 2010)(citing *Rawlings* as well as *Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650 (N.D. Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D. Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D. Ohio 2007)). *Accord*, *Feiertag v. DDP Holdings, LLC,* S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297 (Sep. 9, 2016)(approving 30% award).

Courts reference the NERA study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20 (citing study conducted by the National Economic Research Associates). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," although "the average result achieved for class members was only 7% to 11% of claimed damages." *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12).

Measured by the NERA benchmarks, the proposed Settlement in the present case is exemplary. Plaintiffs' Counsel have actively and aggressively litigated this case against the formidable defense mounted by Defendants. Counsel's efforts included extensive document discovery, multiple mediations, and tedious analyses of damages-related documents and data. Counsel prepared and extensively briefed a Motion for Leave to File Instanter First Amended Complaint and Plaintiffs' First Amended Class and Collective Action Complaint adding Fed. R. Civ. P. 23 allegations (ECF ##25, 25-1, 27), seeking to pursue state law wage claims under Fed. R. Civ. P. 23. The resulting settlement negotiated by Plaintiffs' Counsel ensures substantial

payments to the Plaintiffs, Opt-Ins, and Class Members. Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Plaintiffs' counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. Furthermore, as provided in the Settlement Agreement, attorneys' fees and costs to Plaintiffs' Counsel are not to be paid by Defendants until after the final approval order is issued by the Court. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

### E. The Proposed Notice Should Be Approved

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. *Phillips v. Carlisle & Jacquelin*, 417 US 156, 174-5 (1985). Amended Fed. R. Civ. P. 23(c)(2)(B)(current Dec. 5, 2018) specifically provides that "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances…" Such a notice should define the class, describe clearly the options open to the Class Members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the Class Members to calculate individual recoveries, and prominently display the address and telephone number of class counsel and the procedure for making inquiries.  Manual for Complex Litigation at § 21.312. *See* Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice to Settlement Class Members (the "Notice"), attached as Exhibit 3, should be approved. As an initial matter, Settlement Class Members were previously provided notice of the conditionally certified collective action in July, 2017. (ECF ## 15, 15.1, 15.2, 15.3,

16.) The Notice proposed herein defines the class, describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release, clearly describes the options open to the Class Members and deadlines for taking action, describes the terms of the proposed settlement, discloses benefits provided to class representatives, provides information regarding attorney's fees, indicates the time and place of the fairness hearing, explains the procedure for distributing settlement funds, informs Settlement Class Members how to object to the Settlement or request exclusion from the Class if they so choose, provides information that will enable the Class Members to calculate individual recoveries, and prominently displays the address and telephone number of class counsel and the procedure for making inquiries. The proposed Request for Exclusion Form additionally provides putative Settlement Class Members an efficient method to request exclusion.  The Notice is written in plain and understandable language. The parties request approval of the Notice as drafted. If approved, the Notice will be sent to Potential Settlement Class Members by first class mail.

## F.    **Certification and Preliminary Approval Should Be Granted As to the Proposed Settlement Class**

Certification of the proposed Settlement Class will enable the parties to resolve the state law claims of Plaintiffs and all other Class Members. Rule 23 authorizes the Court to certify a class that satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp.*, 722 F. 3d at 850.

**Numerosity.** The proposed Settlement Class consists of approximately 42 persons who worked as hourly tipped employees of CA Restaurant Group, LLC d/b/a Square 22 Restaurant

and Bar at any point from October 12, 2016 to June 1, 2018 as contained within the Allocation Schedule attached as Exhibit A to the Settlement Agreement. Numerosity is met.

**Commonality and typicality.** By definition, the Settlement Class consists of all present and former hourly tipped employees of CA Restaurant Group, LLC d/b/a Square 22 Restaurant and Bar at any point from October 12, 2016 to June 1, 2018, as contained within the Allocation Schedule attached as Exhibit A to the Settlement Agreement. Plaintiffs' Amended Complaint alleged that Defendants owe additional compensation to those persons pursuant to the Ohio Fair Minimum Wage Amendment, Oh. Const. Art. II, Sec. 34a, and the Ohio wage-and-hour statutes, O.R.C. §§ 4111.01, et seq. (Plaintiffs' First Amended Complaint, ECF #25-1 at ¶¶ 1, 57-64.) All members of the Settlement Class, including Plaintiffs Carter Ellis and Madison Ellis, have these claims, and adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit." *Arlington Video Prods. v. Fifth Third Bancorp,* 515 F.App'x 426, 441 (6th Cir.2013).

**Adequacy of Representation.** Plaintiffs Carter Ellis and Madison Ellis have aggressively pursued the interests of Class Members in this case, and their counsel have extensive experience in class action litigation including wage-and-hour cases. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012)(class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel")(quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)(citation omitted)). As explained above, the class representatives and class counsel have adequately represented the class, achieving an exceptional result for Class Members. Fed. R. Civ. P. 23(e)(2)(A). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20.

**Predominance**. Whether Plaintiffs and other tipped employees of Defendants should have been paid full minimum wage and overtime compensation were common issues in this litigation, and they are the primary issues driving the proposed Settlement. Common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority**. The present case is precisely the type of case in which class litigation is the superior method of adjudication. Here, as *In re Whirlpool*, "class members are not likely to file individual actions" because "the cost of litigation would dwarf any potential recovery." *In re Whirlpool*, 722 F.3d at 861 (citing *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1202 (2013); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

**Arm's-Length Negotiations**. Pursuant to amended Fed. R. Civ. P. 23(e)(2), as discussed above, this settlement comes as the result of a substantial negotiation process, which included two full day mediations before Honorable Magistrate Judge Thomas M. Parker, an experienced mediator of complex cases. These negotiations were conducted at arm's length throughout by attorneys experienced in complex wage-and-hour litigation. The parties were represented by law firms with extensive litigation and employment law experience. Class counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's length and is one that is fair and reasonable to Class Members.

**Adequate Relief for the Settlement Class and Equitable Allocation.** As demonstrated above, Settlement Class Members' damages were determined by calculating the difference between each Settlement Class Member's pre-tip credit wage paid and the Ohio statutory applicable minimum wage during the relevant period, October 12, 2016 – June 1, 2018. This distribution method, based on each Settlement Class Member's actual hours and potential

damages, is eminently the most equitable proposed method of distributing relief to the class.

**Rule 23(c) Considerations** The proposed Preliminary Approval Order (Exhibit 2) and the proposed Notice (Exhibit 3) satisfy the procedural mandates of Rule 23(c)(2) and (e). The proposed Notice gives Settlement Class Members a reasonable period of 45 days to opt out of the Settlement Class or object to the Settlement. The Preliminary Approval Order, in turn, approves the proposed Notice and orders the distribution of the Notice to Settlement Class Members by first-class mail. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974)("individual notice" must be given "to all members who can be identified through reasonable effort"); *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)("first-class mail … fully satisfy the notice requirements of both [Rule] 23 and the due process clause"). Each Settlement Class Members will receive notice so that all putative Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Square 22. Settlement Class Members were previously provided notice of the conditionally certified collective action in July, 2017. (ECF ## 15, 15.1, 15.2, 15.3, 16.)

V.     **CONCLUSION**

For the reasons addressed above, the Parties respectfully request that the Court enter the *Proposed Preliminary Approval Order*, attached as Exhibit 2.

Respectfully submitted,

*s/ Kevin M. McDermott II*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
Scott & Winters Law Firm, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115

P: (216) 912-2221 | F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Counsel for Plaintiffs*


*s/ Rina R. Russo (via email consent)*
Mark S. Fusco (Reg. No. 0040604)
Email: mfusco@walterhav.com
Direct Dial: 216-619-7839
Rina R. Russo (Reg. No. 0087761)
Email: rrusso@walterhav.com
WALTER | HAVERFIELD LLP
The Tower at Erieview
1301 E. Ninth Street, Suite 3500
Cleveland, Ohio 44114
Phone: 216-781-1212/Fax: 216-575-0911

*Attorneys for Defendants CA Restaurant Group, LLC
d/b/a Square 22 Restaurant and Bar ("Square 22"),
Dan Stroemple, and Michael Catanzarite*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically.

Notice of this filing will be sent by operation of the Court's electronic filing system to all parties

indicated on the electronic filing receipt.

*s/ Kevin M. McDermott II*
Kevin M. McDermott II (0090455)
